J-S64031/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: RELINQUISHMENT OF: J.R. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.S.G., FATHER | No. 1158 MDA 2015 |

Appeal from the Order entered June 9, 2015,
in the Court of Common Pleas of Lackawanna County, Orphans'
Court, at No(s): 2015-00028

BEFORE: FORD ELLIOTT, P.J.E., WECHT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JANUARY 12, 2016**

Appellant, D.S.G. ("Father"), appeals from the decree entered in the Court of Common Pleas of Lackawanna County, involuntarily terminating the parental rights of Father to J.R. ("Child") (born in November of 2013) and changing Child's permanency goal to adoption under Section 6351 of the Juvenile Act, 42 Pa.C.S. § 6351.[1]  We affirm.

In February of 2013, Child came into the care of the Lackawanna County Office of Youth and Family Service ("OYFS") due to Mother's mental health concerns and lack of suitable housing for her family.   At that time, Father was incarcerated due to his conviction for burglary and theft by unlawful taking.   Father remains incarcerated at the Madison Correctional Facility in Florida and his minimum release date is in 2017.

---

[*] Former Justice specially assigned to the Superior Court.

[1] On April 22, 2015, C.R. ("Mother") voluntarily terminated her parental rights to Child.

On February 11, 2014, the trial court adjudicated Child dependent. Child was placed in the care of J.L. and J.L. ("Foster Parents"), who adopted Child's half-sister in December of 2014. OYFS set a permanency plan for Father. Father's permanency plan goals were as follows: to complete parenting classes while incarcerated; to continue to be available for court proceedings; and to update OYFS with any placement changes while he was incarcerated. Father's goals for when he was released from incarceration were to obtain employment and suitable housing, as well as bond with Child.

On March 27, 2015, OYFS filed a petition to involuntarily terminate Father's parental rights and to change Child's permanency goal to adoption. On June 4, 2015, the trial court held a hearing on the termination petition. At the hearing, Megan Sporer, an OYFS caseworker, and Father testified. Father participated by telephone from the Madison Correctional Institution and was represented by counsel. On June 5, 2015, the trial court entered a decree involuntarily terminating Father's parental rights to Child and changing Child's permanency goal to adoption.

On July 2, 2015, Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Father raises the following issues.

> Whether the trial court erred as a matter of law and/or manifestly abused its discretion in determining [OYFS] sustained its burden of proving the termination of Father's parental rights is warranted under Sections 2511(a)(1) and/or 2511(a)(2) of the Adoption Act?

Even if this Court concludes [OYFS] established statutory grounds for the termination of Father's parental rights, whether the trial court nevertheless erred as a ma[t]ter of law and/or manifestly abused its discretion in determining [OYFS] sustained its additional burden of proving the termination of parental rights is in the best interest of the Child?

Father's Brief at 5.[2]

Our standard of review regarding orders terminating parental rights is

as follows:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the

burden is upon the petitioner to prove by clear and convincing evidence that

the asserted grounds for seeking the termination of parental rights are valid.

*Id.* at 806. We have previously stated: "The standard of clear and

---

[2] Father did not challenge the goal change to adoption in his statement of questions involved. *See In re J.K.*, 825 A.2d 1277, 1280 n.4 (Pa. Super. 2003) (citing *Commonwealth v. Lord*, 719 A.2d 306 (Pa. 1998), for proposition that issues not included in the statement of questions involved are waived). We conclude that Father has waived any challenge to Child's goal change to adoption.

convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" ***In re J.L.C. & J.R.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003).

"The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted). "If competent evidence supports the [trial] court's findings, [then] we will affirm even if the record could also support the opposite result." ***In re T.B.B.,*** 835 A.2d 387, 394 (Pa. Super. 2003) (citation omitted). Additionally, this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In terminating Father's parental rights, the trial court relied upon Sections 2511(a)(1), (2), and (b) of the Adoption Act which provide as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

- 4 -

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)-(b).

We have explained this Court's review of a challenge to the sufficiency of the evidence to support the involuntary termination of a parent's rights pursuant to Section 2511(a)(1) as follows:

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights

- 5 -

may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citations omitted).

Regarding the definition of "parental duties," this Court has stated:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available

> resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted).

With respect to Section 2511(a)(2), the "grounds for termination [of parental rights] due to parental incapacity that cannot be remedied are not limited to affirmative misconduct[; t]o the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa.Super. 2002) (citations omitted). Nevertheless, parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *Id.* at 340.

> The fundamental test in termination of the parents' rights was long ago cited in *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975). There, the Pennsylvania Supreme Court announced that pursuant to . . . section 2511(a)(2) of the Adoption Act, the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Lilley*, 719 A.2d 327, 330 (Pa. Super. 1998) (citation omitted).

Parental duty requires "that the parent act affirmatively with [a] good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult

circumstances." **In re E.M.**, 908 A.2d 297, 306 (Pa. Super. 2006) (citation omitted).

On appeal, Father argues that the trial court erred in terminating his parental rights to Child pursuant to Section 2511(a)(1). Father's Brief at 9. Father argues that due to Child's age, "there was no way of communicating directly with Child either by telephone or mail," and that the "physical distance separating Father and Child made visitation unfeasible." **Id.** With regard to a parent's incarceration, in **In re S.P.**, our Supreme Court reiterated the standard of analysis pursuant to Section 2511(a)(1) for abandonment and added as follows:

> [a]pplying [**In re McCray**, 331 A.2d 652 (Pa. 1975),] the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." **Id.** at 655. We observed that the father's incarceration made his performance of this duty "more difficult." **Id.**
>
> \*   \*   \*
>
> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

***In re S.P.***, 47 A.3d 817, 828 (Pa. 2012) (citation omitted). Further, the Supreme Court stated, "incarceration neither compels nor precludes termination" of parental rights. ***Id.*** (citation omitted).

The trial court found that during the six months prior to the filing of the termination petition, Father demonstrated a settled purposed of relinquishing his parental claim to Child or failed to perform parental duties. Trial Ct. Op., 7/31/15, at 4. Father was incarcerated since before Child was born. ***Id.*** Moreover, the trial court found that Father failed to enroll in a parenting class until approximately a year after incarceration, but the prison cancelled that class. ***Id.***

At the hearing, Ms. Sporer testified that Father registered for one parenting class, but the class was cancelled. N.T., 6/4/15, at 13. She further testified that he did not register for any other parenting class while incarcerated. ***Id.*** at 13-14. Ms. Sporer testified that Father maintained contact with OYFS throughout his incarceration. ***Id.*** at 26. Ms. Sporer testified that Father's parental rights to Child should be terminated, and that termination of Father's parental rights is in the best interest of Child. ***Id.*** at 15.

The record reveals that the trial court took into consideration that Father has been incarcerated since before Child's birth. The trial court found that Father failed to perform his parental duties by not completing his permanency plan. Trial Ct. Op. at 7. Moreover, the trial court found that

"there is no guarantee that Father will follow through with the permanency plan when he is released," and "[C]hild needs permanency in his life now." *Id.* at 4. We stated in *In re Z.P.*, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re Z.P.*, 994 A.2d 1108, 1125 (Pa. Super. 2010) (citation omitted). Rather, "a parent's basic constitutional right to the custody and rearing of his . . . child is converted, upon the failure to fulfill his . . . parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d at 856. Consequently, Father's issue on appeal lacks merit, and we find no abuse of discretion in the trial court's evaluation of Section 2511(a)(1) with respect to Father.

Father also argues that the trial court erred in concluding that OYFS established termination of Father's parental rights under Section 2511(a)(2). Father's Brief at 11. Father failed to support his arguments with regard to the issues that are preserved for our review with any citation either to the record or legal authority. Pursuant to Pa.R.A.P. 2119(a), "The argument shall be divided into as many parts as there are questions to be argued . . . followed by such discussion and citation of authorities as are deemed pertinent." In addition, Rule 2119(b) provides, "Citations of authorities must set forth the principle for which they are cited." "Appellate arguments which fail to adhere to these rules may be considered waived, and arguments

which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." ***Lackner v. Glosser***, 892 A.2d 21, 29-30 (Pa. Super. 2006) (citations omitted).

Despite our finding of waiver, we would have held that the trial court's decision to terminate Father's parental rights under Section 2511(a)(2) is supported by competent evidence in the record. ***See*** Trial Ct. Op. at 5-6. Accordingly, we would have concluded that the trial court's determinations regarding Section 2511(a)(2) are supported by sufficient, competent evidence in the record.

Father argues he "seeks a chance to be united with Child upon his release from prison." Father's Brief at 13. The trial court must also consider how terminating Father's parental rights would affect the needs and welfare of Child pursuant to 23 Pa.C.S. § 2511(b). Pursuant to Section 2511(b), the trial court's inquiry is specifically directed to a consideration of "whether termination of parental rights would best serve the developmental, physical and emotional needs . . . of the child." ***In re C.M.S.***, 884 A.2d 1284, 1286-87 (Pa. Super. 2005) (citations omitted). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into [the] needs and welfare of the child." ***Id.*** at 1287 (citation omitted). We have instructed that the "court must also discern the nature and status of the parent-child

bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* (citation omitted).

The trial court found it is in Child's best interest to terminate Father's parental rights:

> Father never has had any physical or verbal contact with [C]hild. Father and [C]hild never had a relationship. It is not [C]hild's fault that Father has been incarcerated prior to [C]hild even being born. It is imperative that [C]hild has a permanent residence. There is no guarantee that Father will follow through any requirements set forth by OYFS. More importantly, Father has a minimum release date of 2017, which would leave [C]hild without a permanency until 2017 or longer depending on how long it would take Father to complete the OYFS objectives. [C]hild has been placed with [Foster Parents] since November of 2013, who are able to provide proper care for [C]hild's [n]eurofibromatosis. Additionally, [C]hild's half–sister has already been adopted by [Foster Parents]. [C]hild and Child's half-sister have a loving relationship.

Trial Ct. Op. at 6.

Ms. Sporer testified that Father has never had physical contact with Child and has only seen Child in photographs. N.T. 6/4/15, at 12. She testified that Father has never attempted to speak to Child. *Id.* Ms. Sporer testified that Father and Child do not have any bond. *Id.* Ms. Sporer also testified that Father sent Child some photographs of himself and letters to Child. *Id.* Furthermore, Ms. Sporer testified that terminating Father's parental rights is in the best interest of Child. *Id.* at 8.

Ms. Sporer testified that Child's placement with Foster Parents is safe and appropriate, and Foster Parents are trained to care for Child's

neurofibromatosis. *Id.* at 8, 38. Ms. Sporer testified that Child and Child's half-sister have "a very loving and affectionate bond," and that "they're very much happy to be together." *Id.* at 37-38.

In the instant case, on the issue of bonding, our review of the record reveals no evidence of a bond between Father and Child. The trial court found, "Father has no bond whatsoever with [C]hild," and Father "has never had any physical contact with [C]hild nor has he ever spoken to [C]hild." Trial Court Op. at 4. We have stated, "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). We find that the competent evidence in the record supports the trial court's determination that terminating Father's parental rights pursuant to Section 2511(b) serves Child's best interest. *See In re M.G.*, 855 A.2d at 73-74.

After a careful review, we affirm the decree terminating Father's parental rights on the basis of Section 2511(a)(1), (2), and (b) of the Adoption Act and changing Child's permanency goal to adoption.

Decree affirmed.

This decision was reached prior to January 4, 2016 with Judge Wecht's participation.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2016